1    JEROME C. ROTH (State Bar No. 159483)
     Email: jerome.roth@mto.com
2    ROBERT L. DELL ANGELO (State Bar No. 160409)
     Email: robert.dellangelo@mto.com
3    MUNGER, TOLLES & OLSON LLP
     355 South Grand Avenue
4    Thirty-Fifth Floor
     Los Angeles, CA 90071-1560
5    Telephone:    (213) 683-9100
     Facsimile:    (213) 687-3702
6
     Attorneys for Defendants
7    GOLDEN WEST FINANCIAL CORPORATION,
     HERBERT M. SANDLER, MARION O. SANDLER,
8    JERRY GITT, ANTONIA HERNANDEZ, MARYELLEN
     C. HERRINGER, PATRICIA A. KING (SPECIALLY
9    APPEARING), BERNARD A. OSHER, KENNETH T.
     ROSEN, LESLIE TANG SCHILLING
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13   DAVID BURNETT, On Behalf of Himself        CASE NO. C06-03492 MJJ
14   and All Others Similarly Situated,
                                                DEFENDANTS' NOTICE OF REMOVAL
15                  Plaintiff,

16          vs.

17   GOLDEN WEST FINANCIAL
     CORPORATION, HERBERT M.
18   SANDLER, MARION O. SANDLER,
     JERRY GITT, ANTONIA HERNANDEZ,
19   MARYELLEN C. HERRINGER,
     PATRICIA A. KING, BERNARD A.
20   OSHER, KENNETH T. ROSEN, LESLIE
     TANG SCHILLING and DOES 1-25,
21   inclusive,

22                  Defendants.

23

24

25

26

27

28

     1186862.1

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on this date, defendants, Golden West Financial Corporation ("Golden West"), Herbert M. Sandler, Marion O. Sandler, Jerry Gitt, Antonia Hernandez, Maryellen C. Herringer, Bernard A. Osher, Kenneth T. Rosen, and Leslie Tang Schilling (collectively, "Defendants"), by their undersigned counsel, respectfully submit this Notice of Removal pursuant to 15 U.S.C. §§ 77p(c) and 78bb(f)(2), and 28 U.S.C. §§ 1441(a) and (b) and 1446, removing this action from the Superior Court of the State of California, County of Alameda, in which the action is currently pending, to the United States District Court for the Northern District of California. This Court has original jurisdiction over this matter pursuant to 15 U.S.C. § 77 *et seq.* and 28 U.S.C. § 1331.

In support of this Notice of Removal, Defendants state the following facts that entitle them to remove:

### The Complaint

1.      On or about May 9, 2006, plaintiff David Burnett ("Plaintiff") commenced a civil action against Defendants in the Superior Court of the State of California, County of Alameda, captioned "*David Burnett, on behalf of himself and all others similarly situated v. Golden West Financial Corporation, et al.*," Case No. 06-268861, (the "Complaint"). The Complaint, summons, and civil case cover sheet are attached hereto as Exhibit A. No other pleadings, process or orders have been filed in the state court action.

2.      In the Complaint, Plaintiff alleges two causes of action, one for breach of fiduciary duties and one for unjust enrichment, based on California law and arising out of a proposed merger between Golden West and Wachovia. Complaint ¶¶ 2, 51, 60. As a result of the proposed merger (which is subject to the approval of the shareholders of both companies), Golden West's shareholders will receive consideration of approximately $25 billion for their common stock in Golden West in a mixture of cash and Wachovia stock. *Id.* ¶ 1.

3.      Plaintiff brings the action on behalf of himself and a putative class of all common stockholders of Golden West (other than Defendants and certain other individuals and

1  entities) and alleges that there are more than 308 million shares of Golden West common stock

2  outstanding.  Complaint ¶¶ 42, 43.

3      4.      The Complaint's central thesis is that the merger consideration that will be

4  paid to Golden West's shareholders is too low.  Complaint *passim*.  Plaintiff alleges that common

5  questions include whether Defendants have breached the duty of "candor" by recommending the

6  transaction (Complaint ¶¶ 2, 45(d), 57), and whether the "compensation payable to plaintiff and

7  the Class is unfair and inadequate" (*id.* ¶ 45(g)).  Plaintiff also alleges that a voting agreement

8  among certain Golden West shareholders and a termination fee payable to Wachovia under

9  certain circumstances if the merger is not consummated are *per se* violations of California law.

10  *Id.* ¶ 2.

11  **This Action is Removable Pursuant to the Securities Litigation Uniform Standards Act**

12      5.      This Court has subject matter jurisdiction over this action pursuant to the

13  Securities Litigation Uniform Standards Act ("SLUSA"), which amended Section 28 of the

14  Securities Exchange Act of 1934 (15 U.S.C. § 78bb) by adding, *inter alia*, paragraph (f)(2),

15  "Removal of Covered Class Action."  This subsection provides, "Any covered class action

16  brought in any state court involving a covered security, as set forth in paragraph (1), shall be

17  removable to the federal district court for the district in which the action is pending, and shall be

18  subject to paragraph (1)."  15 U.S.C. § 78bb(f)(2).  Paragraph (1), referred to in the preceding

19  removal provision, prohibits a private party from maintaining a:

20      covered class action based on the statutory or common law of any
21      State or subdivision thereof . . . alleging:

22      (A)  a misrepresentation or omission of material fact in connection
        with the purchase or sale of a covered security; or

23

24      (B)  that the defendant used or employed any manipulative or
        deceptive device or contrivance in connection with the purchase or
        sale of a covered security.

25

26  15 U.S.C. § 78bb(f)(1).

27      6.      The United States Supreme Court recently held that SLUSA should be read

28  broadly so as to prevent plaintiffs from undercutting the effectiveness of the 1995 Private

1186862.1                                    - 2 -

1   Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.*, by bringing class action securities

2   claims in state courts through artful pleading. *See Merrill Lynch, Pierce, Fenner & Smith, Inc., v.*

3   *Dabit ("Dabit")*, 126 S.Ct. 1503, 1513 (2006).

4          7.     The Complaint meets each of the elements set forth in SLUSA.

5   **Covered Class Action**

6          8.     Under SLUSA, a "covered class action" is one in which "damages are

7   sought on behalf of more than 50 persons or prospective class members," or, where "one or more

8   named parties seek to recover damages on a representative basis on behalf of themselves and

9   other unnamed parties similarly situated," and common questions of law and fact predominate

10   over questions affecting individual persons or class members. 15 U.S.C. § 78bb(f)(5)(B)(i)(I) &

11   (II).

12          9.     The Complaint here satisfies this element.  Plaintiff studiously avoids using

13   the word "damages" in his Complaint and sprinkles his pleading with allegations that he is

14   seeking equitable relief.  However, there can be no question but that he is seeking, however

15   labeled, money – *i.e.*, damages.  For example, in the prayer for relief Plaintiff confirms that he is

16   seeking to obtain the "highest possible price" for his shares (Complaint, Prayer ¶ G) – namely,

17   more money than he is presently entitled to receive.  He also bases his claim for unjust

18   enrichment on the allegation that the merger does not provide Plaintiff with "adequate[] and

19   sufficient[]" compensation. *Id.* ¶ 62.  In other words, he is seeking more money. *See also id.* ¶

20   55(c) (alleging that Defendants allegedly breached their fiduciary duties by failing to obtain a

21   higher price).  In addition, Plaintiff seeks an order requiring defendants to pay a cash dividend.

22   *Id.*, Prayer ¶ D.  Thus, however artfully labeled, it is evident that Plaintiff is seeking more money

23   than he is currently entitled to receive pursuant to the terms of the proposed merger and the action

24   constitutes a "covered class action."

25         10.     The action also satisfies the numerical threshold in that the number of

26   shareholders who would be members of the proposed class far exceeds 50.  Golden West has

27   approximately 41,000 shareholders and thus even excluding Defendants and certain other entities,

28   the number of individuals in the proposed class far exceeds 50.

**Covered Security**

11.     The Complaint also satisfies the requirement that the securities be "covered securit[ies]," a term the Uniform Standards Act borrows from Sections 18(b)(1) and (2) of the Securities Act of 1933 (15 U.S.C. § 77r(b)). *See* 15 U.S.C. § 77bb(f)(5)(E).  A covered security includes any security "listed or authorized for listing, on the New York Stock Exchange...."  15 U.S.C. § 77r(b)(1)(A), (B).  Golden West's shares trade on the New York Stock Exchange under the symbol GDW.

**Alleged Misrepresentation Or Omission**

12.     The Complaint also alleges that Defendants have made (and will make) misrepresentations or omissions.  See Complaint ¶ 57 (alleging that shareholders "have not and will not be provided complete and candid information"); *id.* ¶ 55 (a) alleging that Defendants "attempted to bury" certain disclosures in a Form 8-K.

**SLUSA's Exemption For Certain Actions Does Not Apply**

13.     SLUSA exempts certain actions from removal but such actions must, in addition to other requirements, be "based upon the statutory or common law of the State in which the issuer is incorporated...."  15 U.S.C. § 78bb(d)(1)(A).  Golden West is incorporated in the State of Delaware, but the Complaint is not based upon Delaware law.  Thus, the exemption in SLUSA for certain actions brought under the state law of the issuer's state of incorporation does not apply for this reason alone.

14.     Because the Complaint falls within the terms of SLUSA, it must be brought in federal court, under federal law, and not upon the statutory or common law of California.  15 U.S.C. §§ 77p(b) and 78bb(f)(1).

15.     The Complaint was filed on May 9, 2006, and thus removal is timely under 28 U.S.C. § 2446(b).

16.   All defendants named in the action have been served and consent to removal.  Defendant Patricia A. King consents to removal, but is specially appearing without waiving any defenses pursuant to Federal Rule of Civil Procedure 12(b)(2) and her challenge to this Court's *in personam* jurisdiction over her.

DATED: May 30, 2006

MUNGER, TOLLES & OLSON LLP
JEROME C. ROTH
ROBERT L. DELL ANGELO


By: *Jerome C. Roth*
　　　　JEROME C. ROTH

Attorneys for Defendants
GOLDEN WEST FINANCIAL
CORPORATION, HERBERT M. SANDLER,
MARION O. SANDLER, JERRY GITT,
ANTONIA HERNANDEZ, MARYELLEN C.
HERRINGER, PATRICIA A. KING
(SPECIALLY APPEARING), BERNARD A.
OSHER, KENNETH T. ROSEN, LESLIE
TANG SCHILLING

**Exhibit A**

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GOLDEN WEST FINANCIAL CORPORATION, HERBERT M. SANDLER,
MARION O. SANDLER, JERRY GITT, ANTONIA HERNANDEZ,
MARYELLEN C. HERRINGER, PATRICIA A. KING, BERNARD A. OSHER,
KENNETH T. ROSEN LESLIE TANG SCHILLING and DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DAVID BURNETT, On Behalf of Himself and All Others Similarly
Situated

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

MAY 0 9 2006

Sandra Cole

By

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Rene C. Davidson Alameda County Courthouse
1225 Fallon Street
Oakland, CA 94612

CASE NUMBER:
*(Número del Caso):*
**06 - 268861**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Darren J. Robbins, LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 W. Broadway, Suite 1700, San Diego, CA 92101   691/231-1058

| DATE: **MAY 0 9 2006** | PAT S. SWEETEN | Clerk, by _____ | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Herbert M. Sandler
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. | www.USCourtForms.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Darren J. Robbins (168593)
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 W. Broadway, Suite 1700, San Diego, CA 92101
TELEPHONE NO.: 619/231-1058   FAX NO.: 619/231-7423
ATTORNEY FOR (Name): Plaintiff David Burnett

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

ENDORSED
FILED
ALAMEDA COUNTY

MAY 0 9 2006

By

CASE NAME:
Burnett v. Golden West Financial Corp., et al.

CASE NUMBER: RG 06 - 268861

| CIVIL CASE COVER SHEET | | Complex Case Designation | | JUDGE: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | DEPT: |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [ ] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

4. Number of causes of action (specify): 2

5. This case [✓] is  [ ] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 9, 2006

Darren J. Robbins
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

## To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

## To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice—Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 1800–1812)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  DARREN J. ROBBINS (168593)
   RANDALL J. BARON (150796)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone: 619/231-1058
   619/231-7423 (fax)
5
   ADEMI & O'REILLY, LLP
6  GURI ADEMI
   SHPETIM ADEMI
7  3620 East Layton Avenue
   Cudahy, WI  53110
8  Telephone:  414/482-8000
   414/482-8001 (fax)
9
   Attorneys for Plaintiff
10

                    ENDORSED
                     FILED
               ALAMEDA COUNTY

                MAY 0 9 2006

                 Sandra Cole

            By

11                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                             COUNTY OF ALAMEDA

13  DAVID BURNETT, On Behalf of Himself and  )   VIA FAX    06 - 268861
    All Others Similarly Situated,            )
14                                            )   Case No.
                           Plaintiff,         )
15                                            )   CLASS ACTION
         vs.                                  )
16                                            )   COMPLAINT FOR BREACH OF
    GOLDEN WEST FINANCIAL                      )   FIDUCIARY DUTY AND UNJUST
17  CORPORATION,                              )   ENRICHMENT
    HERBERT M. SANDLER,                        )
18  MARION O. SANDLER,                        )
    JERRY GITT,                                )
19  ANTONIA HERNANDEZ,                        )
    MARYELLEN C. HERRINGER,                    )
20  PATRICIA A. KING,                          )
    BERNARD A. OSHER,                          )
21  KENNETH T. ROSEN                           )
    LESLIE TANG SCHILLING and                 )
22  DOES 1-25, inclusive,                     )
                                               )
23                         Defendants.        )
                                               )
24

25

26

27

28

─────────────────────────────────────────────────
         COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

Plaintiff, by his attorneys, alleges as follows:

## SUMMARY OF THE ACTION

1.    This is a stockholder class action brought by plaintiff on behalf of the public stockholders of Golden West Financial Corporation ("Golden West" or the "Company") against Golden West and its senior insiders arising out of defendants' May 7, 2006 announcement that Golden West had entered into a definitive merger agreement with Wachovia Corporation, whereby Wachovia would acquire Golden West for $18.65 in cash and 1.051 shares of Wachovia stock for each share of Golden West stock (the "Acquisition") valued at approximately $25 billion.[1]

2.    Defendants have failed to comply with their fiduciary duties of good faith, due care and candor in connection with the proposed sale of Golden West to Wachovia. Golden West's directors have abdicated their fiduciary obligation to plaintiff and the Class by executing a contract with Wachovia (the "Voting Agreement") requiring each of them to vote in favor of the Acquisition regardless of whether a more favorable offer to purchase Golden West is received from a suitor other than Wachovia. Thus, defendants have – *ex ante* – agreed to vote in favor of the Acquisition regardless of the alternatives available. This is a patent violation of California fiduciary law. Moreover, despite their fiduciary obligations to Golden West's public shareholders, defendants have structured the proposed sale of Golden West to extract special monetary payoffs for certain insiders and directors at the expense of plaintiff and Golden West's other public shareholders. In exchange for funding defendants' multi-million dollar "change of control payments" – including the cost of immunizing defendants vis-à-vis indemnity agreements from Wachovia – and the eleventh-hour decision to double the compensation to the so-called "independent directors" and provide new employment agreements and board seats, defendants have agreed to sell the Company for $25 billion in a radically structured agreement that ensures Wachovia will also reap guaranteed profits. Instead of selling the Company pursuant to a tender offer, which would take approximately 25 days to consummate and pay shareholders, defendants have agreed to sell the Company through essentially a long-term call option,

---

[1]    The actual value of Wachovia stock to be received by Golden West shareholders is dependent upon the price of Wachovia stock.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1   The Acquisition price reflects, in part, the Company's last reported financials for the period which
2   ended in March 2006. Between now and Q4 (December 2006), the Company is poised for phenomenal
3   growth and by Q2, Q3 and Q4, the Company's share price would continue to reflect such growth.
4   However, defendants have, in exchange for the benefits described herein, agreed that Wachovia need
5   not bother paying for the Company's shares (*i.e.*, the shareholders of Golden West) until December 31,
6   2006 (or Q4 2006), by which time the Company's valuation would be materially higher. This structure
7   is highly improper and serves to aggrandize the wealth of defendants and Wachovia while leaving the
8   Company's shareholders in financial purgatory. Shareholders will remain so, absent immediate judicial
9   intervention, having *already* been stripped of the Company's growth, and will receive, at most, forced
10  consideration reflecting stale financial results as old as nine months – an eternity in Wall Street years.
11  In addition to entering into the Voting Agreement with Golden West (which necessarily precludes the
12  Individual Defendants from giving good-faith consideration to higher offers) and approving the payoffs,
13  the defendants have *erected structural barriers* to deter higher offers. For example, defendants
14  included in the merger agreement a provision that requires Golden West, its officers, directors and
15  financial advisors to refrain from obtaining higher bids for Golden West from other suitors (the "No
16  Shop Provision") and a liquidated harm or injury penalty which mandates the payment of millions to
17  Wachovia by Golden West if the sale of Golden West is consummated with anyone other than
18  Wachovia (the "Termination Fee"). The Termination Fee *is a per se violation of California law.*

19          3.      Thus, despite their duty to maximize the value received by Golden West shareholders in
20  connection with the Acquisition, the defendants have failed to do so. Rather they have rubber-stamped
21  a transaction designed to favor Golden West insiders at the expense of plaintiff and Golden West's
22  public stockholders. In essence, the proposed Acquisition is the product of a hopelessly flawed process
23  that was designed to ensure the sale of Golden West to one buyer and one buyer only, on terms
24  designed to benefit Golden West insiders and to subvert the interests of plaintiff and the other public
25  stockholders of Golden West. Absent judicial intervention, defendants will attempt to consummate the
26  Acquisition as detailed herein using an improper structure for purposes of allowing defendants to
27  aggrandize their own wealth at the expense of shareholders, resulting in irreparable injury to plaintiff
28  and the Class.

- 2 -

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

5.     This Court has jurisdiction over Golden West because Golden West conducts business in California and is a citizen of California, as it has its principal place of business at 1901 Harrison Street, Oakland, California. Plaintiff is a citizen of California as are certain of the Individual Defendants, including defendants Herringer and Rosen, who are citizens of California and residents of this County. This action is not removable.

6.     Venue is proper in this Court because the conduct at issue took place and had an effect in this County.

## PARTIES

7.     Plaintiff David Burnett is, and at all times relevant hereto was, a shareholder of Golden West.

8.     Defendant Golden West operates as the holding company for World Savings Bank, FSB, which offers retail banking services in the United States. The Company engages in generating deposits and originating loans. The Company's deposit activities include passbook, checking, and money market deposits. It offers real estate, mortgage, and consumer loans, as well as home loans over the telephone and through the Internet. The Company, through its subsidiary, Atlas Advisers, Inc., serves as an investment advisor. The Company's investment portfolio consists of federal funds, securities, and Eurodollar time deposits. As of December 31, 2005, it had 283 savings branches in 10 states and lending operations in 39 states.

9.     Defendant Herbert M. Sandler ("H. Sandler") is Chairman of the Board and Chief Executive Officer ("CEO") of the Company. He is also Chairman and CEO of World Savings Bank, FSB.

10.    Defendant Marion O. Sandler ("M. Sandler") is Chairman of the Board and CEO of the Company. M. Sandler is also Chairman and CEO of World Savings Bank, FSB, Chairman of the Board

- 3 -

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1  of Golden West's subsidiaries Atlas Advisers, Inc., Atlas Securities, Inc., Atlas Funds and Atlas

2  Insurance Trust. She is the wife of defendant H. Sandler.

3         11.    Defendant Jerry Gitt ("Gitt") is a director of the Company. Gitt is the former First Vice

4  President for Equity Research, Merrill Lynch & Co.

5         12.    Defendant Antonia Hernandez ("Hernandez") is a director of the Company. Hernandez

6  is President and CEO of the California Community Foundation. She is former President and General

7  Counsel of the Mexican American Legal Defense and Educational Fund.

8         13.    Defendant Maryellen C. Herringer ("Herringer") is a director of the Company.

9  Herringer is retired Executive Vice President, General Counsel and Secretary of APL Limited. She also

10  serves as a director of ABM Industries Inc. and PG&E Corporation.

11         14.    Defendant Patricia A. King ("King") is a director of the Company. King is a Professor

12  of Law at Georgetown University and Adjunct Professor, School of Hygiene and Public Health, Johns

13  Hopkins University.

14         15.    Defendant Bernard A. Osher ("Osher") is a director of the Company. Osher is former

15  Chairman of Butterfield and Butterfield, Auctioneers. He is the brother of defendant M. Sandler.

16         16.    Defendant Kenneth T. Rosen ("Rosen") is a director of the Company. Rosen is

17  Professor Emeritus of Business Administration and Chairman of the Fisher Center for Real Estate and

18  Urban Economics, University of California, Berkeley. He is Chairman of the Rosen Consulting Group,

19  a real estate and mortgage market consulting firm. Rosen is former Chairman of Lend Lease Rosen

20  Real Estate Securities, a registered investment adviser. He also serves as director of The PMI Group,

21  Inc. and Avatar Holdings Inc.

22         17.    Defendant Leslie Tang Schilling ("Schilling") is a director of the Company. Schilling is

23  President of L.T.D.D., Inc. and Chairperson of Union Square Investment Company.

24         18.    The true names and capacities of defendants sued herein under California Code of Civil

25  Procedure §474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore

26  sues these defendants by such fictitious names. Plaintiff will seek to amend this Complaint and include

27  these Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1  named defendants is responsible in some manner for the conduct alleged herein and for the injuries

2  suffered by the Class.

3       19.    The defendants named above in ¶¶9-17 are sometimes collectively referred to herein as

4  the "Individual Defendants."

5  **DEFENDANTS' FIDUCIARY DUTIES**

6       20.    As directors of a publicly traded corporation, defendants have an affirmative fiduciary

7  obligation to obtain the highest value reasonably available for the corporation's shareholders and to

8  avoid taking action that:

9            (a)    discourages and inhibits alternative offers to purchase Golden West;

10            (b)    adversely affects the value provided to the corporation's shareholders;

11            (c)    contractually prohibits them from complying with their fiduciary duties;

12            (d)    adversely affects their ability to search for and secure the best value reasonably

13  available under the circumstances for the corporation's shareholders; and/or

14            (e)    provides Golden West insiders with preferential treatment at the expense of, or

15  separate from, its public shareholders.

16       21.    In accordance with his/her duties of loyalty and good faith, the defendants are also

17  obligated to refrain from:

18            (a)    participating in any transaction where the director's or officer's loyalties are

19  divided;

20            (b)    participating in any transaction where the directors or officers receive or are

21  entitled to receive a personal financial benefit not equally shared by the public shareholders of the

22  corporation; and/or

23            (c)    unjustly enriching themselves at the expense or to the detriment of the public

24  shareholders.

25       22.    Plaintiff alleges herein that the Individual Defendants, separately and together, in

26  connection with the Acquisition, violated the fiduciary duties owed to plaintiff and the other public

27  shareholders of Golden West, including their duties of loyalty, good faith and independence, insofar as

28  they contracted away their fiduciary obligations and/or engaged in self-dealing and obtained for

- 5 -

1   themselves personal benefits not shared equally by plaintiff or the Class. As a result of the Individual

2   Defendants' self-dealing and divided loyalties, certain of the Individual Defendants will receive

3   millions of dollars of special payoffs while neither plaintiff nor the Class will receive adequate or fair

4   value for their Golden West stock in the proposed Acquisition.

5       23.     Because the Individual Defendants have breached their duties of loyalty, good faith and

6   independence in connection with the Acquisition, the burden of proving the inherent or entire fairness

7   of the Acquisition, including all aspects of its negotiation, structure, price and terms, rests with the

8   Individual Defendants as a matter of law.

9                   **BACKGROUND TO SALE OF THE COMPANY**

10      24.     Golden West operates as the holding company for World Savings Bank, FSB, which

11  offers retail banking services in the United States. The Company engages in generating deposits and

12  originating loans. The Company's deposit activities include passbook, checking, and money market

13  deposits. It offers real estate, mortgage, and consumer loans, as well as home loans over the telephone

14  and through the Internet. The Company, through its subsidiary, Atlas Advisers, Inc., serves as an

15  investment advisor. The Company's investment portfolio consists of federal funds, securities, and

16  Eurodollar time deposits. As of December 31, 2005, it had 283 savings branches in 10 states and

17  lending operations in 39 states.

18      25.     Prior to selling the Company, the Company adopted a change of control provision in

19  connection with the Company's compensation schedule for defendants and their fellow top officers and

20  directors (the "New Plan"). The Company's officers and employee directors were eligible to receive

21  awards under the New Plan *which would have even greater value upon the sale of the Company* vis-a-

22  vis the change of control terms that were buried within the documented compensation terms.

23  **Share Reserve, Types of Awards, and Grant Limits**

24      26.     The aggregate number of shares that will be authorized for issuance under the New Plan

25  is 25,000,000 shares of common stock. The closing price for the Company's common stock, as

26  reported by the NYSE on February 28, 2005, was $61.89 per share.

27      27.     The Company could issue (i) stock options, as well as (ii) stock grants, Stock

28  Appreciation Rights ("SARs") and stock units (collectively, "equity-based awards") under the New

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1   Plan. A brief description of these awards is provided below. The Company could issue any

2   combination of stock options and equity-based awards, including issuing all awards of the same type, as

3   long as the aggregate amount does not exceed the 25,000,000 authorized share reserve. In each fiscal

4   year, an individual will be limited to receiving stock options that cover no more than 500,000 shares

5   and equity-based awards that cover no more than 200,000 shares.

6   **Description of Awards**

7        28.   The Compensation and Stock Option Committee of the Company's Board (the

8   "Committee") will determine the type of awards, the number of shares covered by each award (subject

9   to the plan's individual and aggregate grant limits), any exercise price, the vesting terms, the expiration

10  date, and the other terms of the awards. The Committee may at any time offer to buy out an award

11  previously granted or authorize a participant to elect to cash out an award previously granted, in either

12  case at such time and based upon such terms and conditions as the Committee establishes.

13  **Stock Options**

14       29.   Both nonstatutory stock options and incentive stock options ("ISOs") may be granted

15  under the New Plan. Stock option grants will be evidenced by an option agreement. The exercise price

16  will be equal to the fair market value of a share of the Company's common stock on the date the option

17  was granted, unless the Committee determines to establish a different exercise price. Payment of the

18  exercise price will be in a form specified in the option agreement and may generally include cash or

19  other form of consideration determined by the Committee. Stock options will expire not later than ten

20  years after the date of grant.

21  **Other Equity-Based Awards**

22       30.   Grants of equity-based awards will be evidenced by an award agreement which may

23  contain varying terms and conditions. What follows is a brief description of each type of equity-based

24  award that could be issued under the New Plan.

25      •   Restricted Stock. Restricted stock refers to shares of common stock that are generally
       not paid for when awarded but are not transferable unless certain conditions are met,

26          which conditions may include performance goals. When the conditions are satisfied,
       then the participant is vested in the shares and has complete ownership of the shares. At

27          any particular time, a participant may be partially vested, fully vested, or not vested at
       all in the restricted stock that was awarded. Other than the restriction on transferability,

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

the holders of restricted stock awarded under the New Plan will generally have the same voting, dividend, and other rights as the Company's other stockholders.

- Stock Units. A stock unit is a bookkeeping entry that represents the equivalent of a share of the Company's Common Stock. A stock unit is similar to restricted stock in that the Committee may establish performance goals and/or other conditions that must be satisfied before the participant can receive any benefit from the stock unit. When the participant satisfies the conditions of the stock unit award, the Company will pay the participant for the vested stock units with cash and/or Company shares. The amount received may depend upon the degree of achievement of the performance goals.

- SARs (Stock Appreciation Rights). A stock appreciation right gives the recipient a right to receive a payment from the Company determined by multiplying (a) the difference between (i) the fair market value of a share of the Company's common stock on the date of exercise of the SAR and (ii) the SAR's exercise price (generally the fair market value of shares on the grant date) by (b) the number of shares with respect to which the SAR is exercised. The Company may pay SARs in cash and/or shares of the Company's common stock. The exercise price will equal the fair market value of a share of the Company's common stock on the date the SAR was granted, unless the Committee determines to establish a higher exercise price. An unexercised SAR will be deemed to be automatically exercised on its expiration date if its per share exercise price is less than the fair market value of a share on such date. SARs may be awarded in conjunction with stock options. SARs cannot be re-priced under the New Plan.

## Performance Goals

31. The New Plan specifies performance goals that the Committee may use in awards. The performance goals are defined as one or more objective measurable performance factors determined by the Committee with respect to each performance period based upon one or more factors, including, but not limited to: (i) return on average assets; (ii) return on average equity; (iii) earnings per share; (iv) diluted earnings per share; (v) ratio of general and administrative expenses to average assets; (vi) ratio of nonperforming assets to total assets; (vii) asset growth; (viii) earnings; (ix) net earnings; (x) capital level maintenance; (xi) loan loss coverage; (xii) ratio of noninterest expense to pre-tax earnings; and (xiii) ratio of pre-tax earnings to net interest income and noninterest income. The New Plan also establishes that a "performance period" can be any period of time up to thirty-six months in duration.

## Termination of Service

32. When a participant's service with the Company or its subsidiaries and affiliates terminates: (i) all unvested portions of any outstanding awards are forfeited; (ii) vested stock options and/or SARs may be exercised within the next thirty days; and (iii) in the event of a participant's death or disability, vested stock options and/or SARs may be exercised within the next twelve months. The Committee, however, may determine to include other post-service exercise provisions in award

- 8 -

1 agreements. In all cases, any post-service exercise periods will be subject to the specified term of the

2 option and/or SAR.

3 Change in Control

4       33.     *An award may, at the time of grant or any time thereafter, in the discretion of the*

5 *Committee, provide for the acceleration of vesting and exercise upon a change in control of the*

6 *Company. In the event of a merger or reorganization of the Company that is not a change in control*

7 *of the Company, a participant's outstanding awards will fully vest and be exercisable unless the*

8 *awards are assumed or continued by the Company or its successor.*

9       34.     On October 20, 2005, the Company issued a press release entitled "Golden West Reports

10 16% Earnings Increase For The Third Quarter." The press release stated in part:

11        *Golden West Financial Corporation, parent of World Savings Bank,*
*announced record diluted earnings per share of $1.22 in the third quarter, up 16%*

12 *from the $1.05 reported during the same period in 2004. Per share profits for the first*
*nine months of 2005 reached $3.50, a 15% increase from the $3.04 posted in the first*

13 *three quarters of 2004.*

14        *Opening his remarks on Golden West's results, Herbert Sandler, Chairman of*
*the Board and Chief Executive Officer, stated, "The key driver behind the growth of*

15 *the Company's profits continues to be our ability to expand our mortgage portfolio,*
*which is our primary earning asset." In the third quarter, Golden West's loans*

16 *receivable balance increased by $3.8 billion. Reflecting on the past three months'*
*activity, Sandler noted, "Our lending team originated $13.8 billion of mortgages, just*

17 *a bit below the all-time high of $14.1 billion set in the same period last year." For the*
*first nine months of 2005, loan volume totaled $38.4 billion, up 7% from the $35.9*

18 *billion recorded in 2004.*

19       35.     On January 24, 2006, the Company issued a press release entitled "Golden West Reports

20 Record Earnings, Deposits, And Loan Originations In 2005." The press release stated in part:

21        Golden West Financial Corporation, parent of World Savings Bank, announced
record diluted earnings per share of $4.77 for 2005, up 15% from the previous all-time

22 high of $4.13 reported in 2004. Per share profits in the fourth quarter of 2005 reached
$1.27, a 17% increase from the $1.09 registered one year earlier.

23        The Company also announced *record* deposit inflows of $7.2 billion, surpassing

24 the previous best of $6.6 billion, set in 2002. For the fourth quarter of 2005, retail
savings grew $1.7 billion, a 33% increase from the $1.3 billion posted in the same

25 period in 2004.

26        *All-time high volume* was also reported by the Company's lending group. Loan
originations totaled $51.5 billion in 2005, compared with $49.0 billion one year earlier.

27 For the fourth quarter of 2005, new loans totaled $13.1 billion, unchanged from the
same period one year earlier.

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

*In discussing the year's accomplishments, Marion Sandler, Chairman of the Board and Chief Executive Officer, first touched on Golden West's earnings growth. She observed, "The impetus behind the growth of the Company's profits was our ability to expand the mortgage portfolio, which is our primary earning asset. Loan balances increased by $16.7 billion, or 16%, in 2005. Growing the mortgage portfolio is important, because the more earning assets the Company has on the books, the more interest income we generate."*

*Reflecting on the 2005 lending environment in particular, Sandler stated, "As usual, the popularity of our main product, the adjustable rate mortgage, or ARM, was influenced by what was happening with fixed-rate mortgages, or FRMs, the customers' other alternative. Favorable long-term rates kept interest on FRMs near historic lows all year, providing an attractive option to borrowers. Despite stiff competition, our lending team produced record loan volume."*

*Continuing, Sandler remarked, "While originations were strong this past year, repayment activity also remained high, stimulated by low mortgage rates, strong home sales, and a desire on the part of many borrowers to turn the equity in their homes into cash. Nevertheless, the new loans we added exceeded payoffs, leading to 16% growth of the Company's loan portfolio."*

36.     On April 20, 2006, the Company issued a press release entitled "Golden West Reports 12% Earnings Increase for the First Quarter." The press release stated in part:

Golden West Financial Corporation, parent of World Savings Bank, announced diluted earnings per share of $1.25 for the first three months of 2006, up 12% from the $1.12 reported in the same period in 2005.

Opening his remarks with a review of Golden West's earnings results, Herbert Sandler, Chairman of the Board and Chief Executive Officer, stated, "As always, the key driver behind the growth of the Company's profits was the ability to expand our mortgage portfolio, which is our primary earning asset." Since the first quarter of last year, Golden West's loans receivable increased by $14.8 billion, or 14%.

Reflecting on the lending environment, Sandler observed, "As usual, the popularity of our main product, the monthly adjustable rate mortgage, or ARM, is influenced by what's happening with fixed-rate mortgages, or FRMs, the customers' primary alternative. Low long-term interest rates made FRMs very attractive to borrowers. At the same time, the cost of ARMs continued to climb. Despite stiff competition, our first quarter loan volume of $11.6 billion was slightly above the $11.2 billion achieved one year earlier."

*Continuing, Sandler remarked, "While first quarter originations were solid, repayment activity remained high, stimulated by low mortgage rates, strong home sales, and a desire on the part of many borrowers to convert the equity in their homes into cash. Nevertheless, new loans exceeded payoffs, and the mortgage portfolio grew $2.9 billion in the quarter, or at a 10% annualized rate."*

Adding to his discussion of Golden West's quarterly performance, Sandler pointed out, "A key factor that influences Golden West's profits is the Company's primary spread, which is the difference between the yield on loans and investments and the cost of savings and borrowings." In the first quarter of 2006, Golden West's spread averaged 2.57%, down from 2.65% in the same period one year earlier. Explaining the decrease, Sandler said, "Since the beginning of last year, the Federal Reserve's Open

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

Market Committee has raised the Federal Funds rate, which influences short-term yields, from 2.25% to 4.75%. Our spread normally contracts temporarily when short-term rates rise, because the yield we earn on our loan portfolio responds to interest rate movements more slowly than the cost of our deposits and borrowings," As a side note, Sandler pointed out that the Company's spreads have been adjusted for a change in financial reporting, which is discussed in more detail later in this release.

\*   \*   \*

*Concluding his remarks, Sandler reflected on Golden West's being named America's most admired mortgage services company in the March 6, 2006 issue of FORTUNE magazine. Previously, FORTUNE named Golden West the nation's most admired mortgage services company in 2005 and 2003. The Company ranked number one in each of the eight categories included in the survey: social responsibility, long-term investment value, employee talent, quality of products/services, innovation, use of corporate assets, financial soundness, and quality of management. Sandler observed, "This distinction recognizes our success in meeting the needs of the nation's homeowners, in utilizing the talents of our employees, and in serving the interests of our shareholders."*

37.   *On May 3, 2006, just days prior to public disclosure of the Acquisition, defendants voted to double the size of the independent directors' fees.* Curiously, this transpired with no shareholder vote, just days prior to the Acquisition and was buried in a Form 8-K. The Company's Form 8-K stated in part:

**Item 1.01.   Entry into a Material Definitive Agreement**

On May 3, 2006, the Golden West Board of Directors approved an increase in the annual retainer paid to non-management Directors. The annual retainer was increased to $52,000 [or by 100%], effective immediately . . . .

38.   On May 4, 2006, the Company issued a press release entitled "Golden West Financial Corporation Declares Quarterly Dividend." The press release stated in part:

Golden West Financial Corporation, parent of World Savings Bank, declared a quarterly dividend of $0.08 per share at its May 3, 2006 Board of Directors meeting. The dividend will be distributed June 12, 2006 to shareholders of record as of May 15, 2006.

39.   On May 7, 2006, Wachovia issued a press release entitled "Wachovia To Acquire Golden West Financial, Nation's Most Admired and 2nd Largest Savings Institution; Enhances Retail Banking Network in Attractive Growth Markets and Bolsters National Consumer Lending." The press release stated in part:

Wachovia Corporation and Golden West Financial Corporation, parent of World Savings Bank, said today they have signed a definitive agreement to merge, creating a leading retail banking and mortgage lending franchise in many of the nation's most attractive growth markets.  This combination strengthens Wachovia's presence in

- 11 -

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

California, Florida and Texas, and extends the banking franchise within reach of 55 percent of the U.S. population.

With the acquisition of Oakland, California-based Golden West, Wachovia will add 285 consumer banking offices with $62 billion in retail deposits in 10 states while entering new markets in California, Arizona, Colorado, Illinois, Kansas and Nevada. The combined company, which will have assets of $669 billion and a market capitalization of $117 billion, will serve banking customers in 21 states and Washington, D.C. Wachovia will gain mortgage lending operations under the World Savings Bank name in 39 states.

"We believe this combination of our two companies, both known for exceptional customer service and pristine credit quality, will generate superior long-term growth in earnings per share," said Ken Thompson, Wachovia chairman and chief executive officer, who noted that Golden West's World Savings Bank is the nation's only standalone savings and loan with an "AA" debt rating. "For four decades, Golden West has taken industry-wide challenges in stride and maintained a singular focus as a risk-averse residential mortgage portfolio lender. The result is an astonishing 25-year track record of 17 percent compound annual growth in earnings per share and virtually no credit losses realized even in the toughest year in its history."

Herbert M. Sandler, Golden West chairman and chief executive officer, commented, "I've been a keen observer of the market and the mortgage and banking industries for nearly 40 years. Wachovia is the company we selected to entrust with our legacy as one of the nation's most admired and trusted financial institutions. We share the same values of operating with integrity, putting customers first and encouraging teamwork."

Added Marion O. Sandler, Golden West chairman and chief executive officer, "Golden West has grown consistently over many years, and now we'd like to provide our loyal customers with the additional banking products they've been asking for. We believe Wachovia is the perfect partner to deliver on customers' needs and further enhance the strong company we have built."

Terms of the agreement call for each Golden West shareholder to receive a package of 1.051 shares of Wachovia common stock and $18.65 in cash. Based on the closing price of Wachovia common stock on May 5, 2006, this represents a price of $81.07 per share of Golden West common stock, a 15 percent premium over Golden West's share price on that date. The purchase accounting transaction, which is expected to close in the fourth quarter of 2006, is expected to add to Wachovia's earnings per share excluding merger-related and restructuring expense and intangibles amortization by the end of the second year after closing. It is expected to provide an internal rate of return of 17 percent for Wachovia shareholders.

Wachovia and Golden West will be well-positioned in numerous high-growth markets, with an extensive product offering – the No. 1 retail bank in the Southeast, a Top 5 bank in the western United States, Top 10 mortgage origination and servicing company, Top 10 indirect auto lender, a leading national brokerage and fund manager, and a well-positioned corporate and investment bank. The combined company will have total deposits of $390 billion and loans of $402 billion. The company's 15 million customers will be served by more than 110,000 employees, 3,400 banking branches, 5,300 ATMs, 360 mortgage lending offices and 730 full-service retail brokerage offices.

"We're very excited to partner with such strong management and with an extremely knowledgeable and diligent team of sales leaders," said Ben Jenkins,

- 12 -

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

Wachovia vice chairman and General Bank president. "Customers will continue to be served by the same dedicated and passionate people who have always met their needs — only over time, they'll have more products and services to choose from. We'll work hard with our new partners to achieve merger efficiencies, but we expect that no employees who deal directly with customers will lose their jobs."

"Both companies are proud of their tradition of outstanding community service," added Marion Sandler of Golden West. "Together, we will strengthen our community leadership, and our shared commitment to the communities we serve will be made more powerful by this merger." Each company currently has been rated "outstanding" for Community Reinvestment Act compliance by federal regulators.

Wachovia expects the merger will generate $53 million after tax in annual expense reductions, phased in over two years. This equals less than 1 percent of the companies' current combined expense base. Wachovia expects to take merger-related one-time charges of $293 million after tax, related to staff training, retention and severance; real estate; systems integration; and other miscellaneous accruals.

The complementary strengths of the two companies are expected to generate significant revenue opportunities; however, revenue assumptions were not included in the financial assumptions for the transaction.

*When the merger is completed, two members of the current Golden West board of directors will join the Wachovia board. Completion of the transaction is subject to shareholder approvals by both companies and normal regulatory approvals. The boards of directors of both companies unanimously approved the merger. In addition, Golden West's chief executive officers and another Golden West director, Bernard A. Osher, have entered into voting agreements with Wachovia whereby they each agree to vote their shares of Golden West common stock in favor of the merger. Merrill Lynch, Wachovia Securities and Sullivan & Cromwell represented Wachovia and Lehman Brothers and Wachtell, Lipton, Rosen & Katz represented Golden West.*

## NEGOTIATION AND CONSIDERATION OF THE TERMS OF THE PROPOSED ACQUISITION

40.     Although the Individual Defendants owe the highest duty known to the law to plaintiff and Golden West's other public stockholders, the Individual Defendants extracted multi-million dollar benefits for themselves, which benefits are conditioned upon: (i) their agreement to endorse the Wachovia offer as "fair" to Golden West's shareholders regardless of whether they could obtain a better deal for Golden West stockholders; (ii) voting their own shares in favor of the Acquisition; and (iii) agreeing not to pursue offers and/or indications of interest that are/were presented to Golden West.

41.     In summary, the proposed Acquisition is wrongful, unfair and harmful to Golden West's public stockholders, and represents an effort by the defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

## CLASS ACTION ALLEGATIONS

42.   Plaintiff brings this action pursuant to §382 of the California Code of Civil Procedure on his own behalf and as a class action on behalf of all common stockholders of Golden West who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants, or their principals or affiliates.

43.   This action is properly maintainable as a class action.

44.   The Class is so numerous that joinder of all members is impracticable. According to Golden West's SEC filings, there were more than 308 million shares of Golden West common stock outstanding as of February 2006.

45.   There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)   whether defendants have breached their fiduciary duty of undivided loyalty, independence, due care and/or candor with respect to plaintiff and the other members of the Class in connection with the Acquisition;

(b)   whether the Individual Defendants are engaging in self-dealing in connection with the Acquisition;

(c)   whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Acquisition;

(d)   whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Golden West;

(e)   whether defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Acquisition, including the duties of good faith, diligence, candor and fair dealing;

(f)   whether the defendants have impeded or erected barriers to discourage other offers for the Company or its assets;

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

(g)     whether the acquisition compensation payable to plaintiff and the Class is unfair and inadequate; and

(h)     whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

46.     Plaintiff's claim is typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

47.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

48.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

49.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

50.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (For Breach of Fiduciary Duties Against All Defendants)

51.     Plaintiff repeats and realleges each allegation set forth herein.

52.     The defendants have violated fiduciary duties of care, loyalty, candor and independence owed to the public shareholders of Golden West and have acted to put their personal interests ahead of the interests of Golden West shareholders.

53.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in Golden West.

54.     The defendants who are Committee members have violated their fiduciary duties by recommending the transaction to the Board and all of the Individual Defendants violated their fiduciary

- 15 -

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1    duties by entering into a transaction with Wachovia without regard to the fairness of the transaction to

2    Golden West's shareholders.

3        55.   As demonstrated by the allegations above, the defendants failed to exercise the care

4    required and breached their duties of loyalty, good faith and candor owed to the shareholders of Golden

5    West because, among other reasons:

6        (a)   They encouraged outside directors to approve the Acquisition by rushing to

7    double the size of their compensation just days prior to public disclosure of the sale and then attempted

8    to bury such in a Form 8-K. Furthermore, defendants did not obtain shareholder approval.

9        (b)   They failed to prevent or investigate the preferential terms and treatment certain

10   of the defendants are receiving relative to the public shareholders, which, among other things,

11   effectively pay certain of the defendants far more per share than the public shareholders.

12       (c)   Defendants have failed to take steps to maximize the value of Golden West to its

13   public shareholders and refused to give reasonable consideration to an alternative bid or enact

14   competitive bidding in order to give Wachovia an unfair advantage.

15       56.   By reason of the foregoing acts, practices and course of conduct, the defendants have

16   failed to exercise reasonable care and diligence in the exercise of their fiduciary obligations toward

17   plaintiff and the other members of the Class.

18       57.   As a result of the actions of defendants, plaintiff and the Class have been and will be

19   irreparably harmed in that they have not and will not be provided complete and candid information

20   concerning the Acquisition, which information is in the possession of defendants.

21       58.   Unless enjoined by this Court, the defendants will continue to breach their fiduciary

22   duties owed to plaintiff and the Class, and may consummate the proposed Acquisition using the illegal

23   process stated herein which will result in irreparable harm to the Class.

24       59.   Plaintiff and the members of the Class have no adequate remedy at law. Only through

25   the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the

26   immediate and irreparable injury which defendants' actions threaten to inflict.

27

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

## SECOND CAUSE OF ACTION

### (For Unjust Enrichment Against All Defendants)

60.     Plaintiff repeats and realleges each allegation set forth herein.

61.     As a result of defendants' self-dealing in connection with the Acquisition, they have received or will receive personal financial benefits not shared equally with plaintiff or the Class, and will be unjustly enriched at the expense of Golden West's shareholders.

62.     Unless enjoined by this Court, the Individual Defendants may consummate the proposed Acquisition, which: (i) will unfairly confer personal financial benefits on these defendants which are not shared equally by plaintiff or the Class, without adequately and sufficiently compensating plaintiff and the other Golden West shareholders for surrendering these valuable assets and business opportunities; and (ii) will unfairly confer financial benefits upon these defendants for endorsing the proposed Acquisition in the form of their payments for fulfilling the responsibilities as described above.

63.     Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Acquisition agreement was entered into in breach of the fiduciary duties of the defendants and is therefore unlawful and unenforceable;

C.     Rescinding, to the extent already implemented, the Acquisition or any of the terms thereof;

D.     Requiring defendants to pay the dividend declared May 4, 2006 and to not attempt to back out of such obligations as other companies in midst of mergers have done;

E.     Imposing a constructive trust in favor of plaintiff and the Class on the millions of dollars of stock, options and change-of-control payments to be provided to certain of the Individual Defendants in connection with the Acquisition pending trial;

- 17 -

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1     F.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert

2 with them from consummating the Acquisition, unless and until the defendants provide Golden West

3 shareholders with an offer that is fair and equitable;

4     G.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a

5 transaction which is in the best interests of Golden West's shareholders and implement a process for the

6 sale of the Company designed to ensure that the highest possible price is obtained;

7     H.      Awarding plaintiff the costs and disbursements of this action, including reasonable

8 attorneys' and experts' fees; and

9     I.      Granting such other and further relief as this Court may deem just and proper.

10 DATED: May 9, 2006             LERACH COUGHLIN STOIA GELLER
                                RUDMAN & ROBBINS LLP

11                          DARREN J. ROBBINS
                         RANDALL J. BARON

12

13

14                             DARREN J. ROBBINS

15                          655 West Broadway, Suite 1900
                         San Diego, CA 92101

16                          Telephone: 619/231-1058
                         619/231-7423 (fax)

17

18                          ADEMI & O'REILLY, LLP
                         GURI ADEMI

19                          SHPETIM ADEMI
                         3620 East Layton Avenue

20                          Cudahy, WI 53110
                         Telephone: 414/482-8000
                         414/482-8001 (fax)

21

22                          Attorneys for Plaintiff

   S:\CptDraft\Deal\Cpt Golden West.doc

23

24

25

26

27

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

## PROOF OF SERVICE BY MAIL

I, Steve Kolby, declare:

1. I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of San Francisco, State of California. My business address is 560 Mission Street, 27th Floor, San Francisco, California 941 05-2907.

2. On May 31, 2006, I served a true and correct copy of the attached documents entitled **Defendants' Notice of Removal** by placing it in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) shown below and placing said envelope(s) in interoffice mail for collection and deposit in the United States Postal Service at 560 Mission Street, 27th Floor, San Francisco, California, on that same date, following ordinary business practices:

Darren J. Robbins
Randall J. Baron
Lerach Coughlin Stoia Geller Rudman &
Robbins, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Guri Ademi
Shpetim Ademi
Ademi & O'Reilly, LLP
3620 East Layton Avenue
Cudahy, WI  53110

3. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 31, 2006, at San Francisco, California.

_____
Steve Kolby

1187022.1